

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIM MARIE CLARK,

   Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,[1]

   Defendant.

---

18-CV-0509-MJR
DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). (Dkt. No. 14)

Plaintiff Kim Marie Clark ("plaintiff") brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## BACKGROUND

Plaintiff applied for DIB and SSI on September 11, 2014 alleging disability beginning July 14, 2014 due to depression, migraine headaches, herniated discs in neck and back, and carpal tunnel issues. (See Tr. 10, 152-59, 173)[2] Plaintiff's applications

---

[1] The Clerk of Court is directed to amend the caption accordingly.
[2] References to "Tr." are to the administrative record in this case. (Dkt. No. 6)

were denied at the initial level, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 57, 74-75) A video hearing was held before ALJ David Begley, during which plaintiff and a vocational expert testified. (Tr. 23-55) On July 11, 2017, ALJ Begley found plaintiff not disabled, and on March 6, 2018, the Appeals Council denied plaintiff's request for review. The ALJ's determination therefore became the final decision of the Commissioner, and this timely action followed. (Tr. 1-3; Dkt. No. 1)

Plaintiff moves for judgment on the pleadings on the grounds that the ALJ's physical RFC assessment was the product of his own lay judgment; the ALJ failed to develop the opinion evidence to account for plaintiff's recent surgeries and migraine headaches; and erred in evaluating the opinion of the consultative psychologist. (Dkt. No. 9-1 [Plaintiff's Memorandum of Law] at 1) The Commissioner cross-moves for the same relief, arguing that there was substantial evidence to support the ALJ's decision that plaintiff was not under a disability, as defined by the Act, between July 14, 2014 and July 11, 2017. (Dkt. No. 12-1[Defendant's Memorandum of Law] at 1) For the following reasons, plaintiff's motion (Dkt. No. 9) is denied and defendant's motion (Dkt. No. 12) is granted.

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks

and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.  *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."

4

*Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not

5

disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

In applying the five-step sequential evaluation process, the ALJ found at step one that plaintiff did not engage in substantial gainful activity since July 14, 2014. (Tr. 13) At step two, the ALJ found that plaintiff had severe impairments consisting of: (1) cervical degenerative disc disease status post-surgery; (2) lumbar degenerative disc disease; (3) bilateral carpal tunnel syndrome status post-releases; and (4) migraines.[3] (Tr. 13) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14) Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [she] can occasionally push and pull with the upper extremities; cannot climb ladders, ropes, or scaffolds; can occasionally reach overhead with the upper extremities; can frequently handle and finger bilaterally; must avoid concentrated exposure to excessive noise and bright lights outside a normal office setting, and to excessive vibration; and must avoid slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames.

(Tr. 14-15)

---

[3] Also at step two, the ALJ found that plaintiff's medically determinable impairments of depression and stress incontinence were non-severe. (Tr. 13-14)

At step four, the ALJ found that plaintiff was capable of performing her past relevant work as a medical receptionist. (Tr. 17-18) Accordingly, the ALJ found plaintiff not disabled. (Tr. 18)

IV. *Plaintiff's Challenges*

A. Stale Opinion Evidence

Plaintiff first argues that the ALJ erred in relying on the medical opinion of consultative examiner Donna Miller, D.O., because her opinion was rendered stale by four subsequent surgeries. (Dkt. No. 9-1 at 12-14; Dkt. No. 12-1 [Plaintiff's Reply]) Specifically, plaintiff asserts that Dr. Miller's opinion, which was issued before plaintiff's carpal tunnel and cervical fusion surgeries, could not support the ALJ's RFC assessment. (Dkt. 9-1 at 14) She also claims that the physician's opinion failed to account for her migraine headaches, which resulted in the ALJ's lay speculation in assessing her headache-related limitations. (*Id.*)

It is well-settled that an "ALJ should not rely on 'stale' opinions—that is, opinions rendered before some significant development in the claimant's medical history." *Robinson v. Berryhill*, No. 17-CV-0362, 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018) (citing *Jones v. Colvin*, No. 14-CV-6316, 2015 WL 4628972, at *4 (W.D.N.Y. Aug. 3, 2015)). Medical source opinions that are "conclusory, stale, and based on an incomplete medical record" may not be substantial evidence to support an ALJ's RFC finding. *Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 n.9 (W.D.N.Y. July 27, 2009). "The mere passage of time does not render an opinion stale. Instead, a medical opinion may be stale if subsequent treatment notes indicate a claimant's

7

condition has deteriorated." *Whitehurst v. Berryhill*, No. 16-CV-1005, 2018 WL 3868721, *4 (W.D.N.Y. Aug. 14, 2018).

In evaluating the opinion evidence, the ALJ discussed the opinion of Dr. Miller, who performed a consultative physical examination of plaintiff in November 2014. (Tr. 17, 294-97) Dr. Miller opined that plaintiff had mild to moderate limitations in heavy lifting, bending, carrying, pushing, pulling, and repetitive motion of her hands. (Tr. 297) The ALJ afforded Dr. Miller's opinion "some weight," noting that while it was somewhat consistent with the objective medical evidence, it was prior to the improvement plaintiff experienced with her headaches and carpal tunnel surgery. (Tr. 17)

In assessing whether plaintiff's condition deteriorated after Dr. Miller's medical opinion, the record is clear, as the ALJ pointed out, that "the claimant experienced improvement in her back and neck pain following surgery. She also experienced improvement in her carpal tunnel following surgery." (Tr. 17) The ALJ also clarified that Dr. Miller's opinion was given prior to plaintiff's recent surgeries, and therefore was afforded "some weight." (Tr. 17) Substantial evidence supports the ALJ's conclusion.

For example, plaintiff testified at the administrative hearing that both the carpal tunnel and the cervical fusion surgeries essentially resolved her issues. With regard to the carpal tunnel releases performed in 2016, she told the ALJ that she noticed improvement, did not wear a brace, did not have trouble manipulating smaller objects or with her grip, and that neither hand was worse than the other. (Tr. 43-46) Plaintiff reported to her doctor following the surgery that she was "doing very well" and that the numbness and tingling in her digits had resolved. (Tr. 16, 1004) A year later, plaintiff underwent a second right compartment release surgery after which she reported "much

improve[ment.]" (Tr. 946) Finally, the ALJ observed that plaintiff exhibited normal finger and hand dexterity during Dr. Miller's evaluation, which was consistent with the post-operative evaluations performed by plaintiff's providers. (Tr. 16, 296, 947, 1005)

The evidence is consistent with mild to moderate limitation in repetitive hand motion, as opined by Dr. Miller, and also shows that plaintiff could perform the frequent handling and fingering as indicated in the RFC despite the passage of time between Dr. Miller's evaluation and the ALJ's decision (Tr. 14) Significantly, plaintiff does not appear to argue that she experienced a serious deterioration of her wrist impairment between 2014 and 2017. (Docket No. 9-1 at 12-14) Nor does the record support any such assertion. In light of these facts, the opinion relied upon by the ALJ was not stale and properly considered in light of plaintiff's later treatment. *See Palistrant v. Comm'r of Soc. Sec.*, No. 16-CV-588, 2018 WL 4681622, at *7 (W.D.N.Y. Sept. 28, 2018) ("Just because the claimant continues treatment after an opinion is rendered, however, does not mean that the opinion is stale. Although [plaintiff] also argues that he experienced a "serious deterioration" of his back and neck issues after the opinions were rendered . . . the record does not support this assertion.").

The same is true regarding plaintiff's cervical fusion procedure, which occurred in April 2015, approximately five months after Dr. Miller's evaluation. The ALJ observed that plaintiff experienced improvement following surgery, her recent MRIs demonstrated no significant spinal canal stenosis or disc herniation above or below her instrumented levels, and she was referred to physical therapy. (Tr. 16) Following the 2015 procedure, plaintiff reported to spinal surgeon Christopher Hamill, M.D., that her pain improved since surgery, and cervical spine x-rays showed "the instrumentation in good position, at C5-6

9

and C6-7." (Tr. 1130) In July 2015, plaintiff reported to Dent Neurologic Institute ("Dent") that not long after surgery, her "head and neck pain improved quite dramatically." (Tr. 838) On April 6, 2016, plaintiff returned to Dr. Hamill for a follow-up visit, during which she reported that she was doing well with occasional aches and pains "but nothing significant." (Tr. 1022) X-rays of the cervical spine again showed that the instrumentation from the surgery was in tact. (*Id.*) In November 2016, Dr. Hamill reviewed a recent cervical spine MRI that did not show any significant spinal canal stenosis or disc herniation above or below her instrumented levels. He explained to plaintiff that "everything look[ed] relatively good from an MRI standpoint," and recommended rehabilitation physicians to her. (Tr. 1007)

The examination findings, objective medical imaging, and continued course of conservative treatment is consistent with the limitations assessed by Dr. Miller. Plaintiff does not point to evidence supporting a deterioration of her condition, so as to render this opinion stale. *See, e.g, Wilson v. Berryhill*, No. 16-CV-0664, 2018 WL 4211322, at *7 (W.D.N.Y. Sept. 4, 2018) (plaintiff's staleness argument was without merit where later examinations showed improvement); *Habschied v. Berryhill*, No. 17-CV-6217, 2019 WL 1366040, at *9 (W.D.N.Y. Mar. 26, 2019) (opinions were not stale where subsequent records showed improvement); *Jones v. Colvin*, No. 13-CV-6443, 2014 WL 2560593, at *7 (W.D.N.Y. June 6, 2014) ("Plaintiff, however, has failed to establish how [her] condition deteriorated after [the reviewing physician's] report. In fact, the record reflects that Plaintiff's condition generally remained the same after January 2011, and that her eyesight actually improved."). The Court therefore rejects this contention.

Plaintiff also avers that Dr. Miller's opinion did not consider plaintiff's severe impairment of migraine headaches. (Dkt. No. 9-1 at 14) Plaintiff is correct that migraine headaches were not included in Dr. Miller's diagnoses, however, it was also not included in plaintiff's complaints or reports to the physician, which focused on her back, neck, and carpal tunnel related issues. (Tr. 294)

The balance of the medical evidence indicates that plaintiff sought treatment at Dent for migraine headaches. In July 2015, plaintiff reported that her head and neck pain "improved quite dramatically" since cervical surgery and that she was experiencing two to three headaches per month, and that medication helped relieve her symptoms. (Tr. 838) The following January plaintiff was assessed with migraine without aura, not intractable, without status migrainosus. (Tr. 839) She reported "managing very well with her headaches particularly since having undergone discectomy and cervical fusion." (Tr. 837) In July 2016, plaintiff reported two to three migraine episodes per month and she had not had debilitating headaches since her cervical disc surgery in 2014. (Tr. 843) Three months later, plaintiff reported a flare up of neck pain and stiffness with associated headaches "almost constant[ly]." (Tr. 846) Plaintiff was willing to re-start Amitrityline. (Id.) In January 2016, plaintiff reported constant low-grade headaches. Naproxen and Naratriptan worked will if taken at the onset of migraine flareups. (Tr. 1063)

Plaintiff testified that she had migraine headaches approximately once per week. Triggers included light sensitivity, fluorescent lighting, computer screens, and neck pain. She took medication prescribed at Dent. (Tr. 38)

With respect to her daily activities, plaintiff lived alone with her dog. She had a driver's license but had not driven for a few weeks. She managed her own medication,

11

dressed and bathed herself regularly, and used a computer occasionally to contact her son out-of-state. She occasionally did laundry, and if she grocery shopped it "has to be a very, very quick trip." (Tr. 31-36) Plaintiff attended church every other week, and helped care for elderly father a couple of times per month. (Tr. 36-37)

The ALJ pointed out that, although plaintiff testified that she stopped working in March of 2014 due to migraines and back pain, she reported to the consultative examiner that she had been "let go" because the "company was going through some changes." (Tr. 13, 322) Additionally, after alleging disability beginning in July 2014 based on migraine headaches, plaintiff sought work and received unemployment benefits during the relevant time period. (Tr. 13, 164, 173, 734). Despite a ten-year history of migraine headaches, plaintiff continued to work until she was laid off in March 2014. (Tr. 29, 38)

After reviewing the record, the ALJ concluded that the objective medical evidence indicated that plaintiff's headaches were a severe impairment that affected her ability to perform work. (Tr. 16) He went on to account for that impairment by reducing plaintiff's RFC to sedentary work with limitations of avoiding excessive noise, bright lights outside of a normal office setting, and excessive vibrations. (*Id.*)

As plaintiff points out, an ALJ may not interpret raw medical data or substitute his opinion for that of a medical source. See *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). Furthermore, the ALJ generally bears a burden for developing the record, even in circumstances where a claimant is represented. See e.g., *Fredrick v. Comm'r Soc. Sec.*, No. 16-CV-898, 2018 WL 4178284, at *1 (W.D.N.Y. Aug 31, 2018). Yet the ALJ's duty to develop the record "is not an affirmative duty to expand the record ad infinitum." *Wilson*

*v. Berryhill*, No. 16-CV-0756, 2018 WL 6628987, at *4 (W.D.N.Y. Dec. 19, 2018) (quoting *Walker v. Astrue*, No. 11-CV-766, 2012 WL 4473249, at *3 (W.D.N.Y. Sep. 26, 2012)).

Here, the ALJ did not rely on "lay speculation" in including limitations in her RFC to account for her migraines because the record contained no gaps, nor does plaintiff point to any gaps in the record regarding migraine headaches. Plaintiff suggests that because there was no other opinion of her functional abilities besides Dr. Miller's, the ALJ's RFC finding could not be based on substantial evidence. (Dkt. No. 9-1 at 14) An ALJ, however, may assess limitations of a claimant's RFC "where there are no obvious gaps in the administrative record, and where the ALJ already possess a complete medical history," despite the lack of a credible medical source opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). In light of all of the above evidence, the record in this case was sufficient for the ALJ to assess the headache-related limitations of plaintiff's sedentary RFC without a specific medical source opinion. *See Wilson*, 2018 WL 6628987, at *4 (W.D.N.Y. Dec. 19, 2018) (RFC statement from medical source regarding certain work related abilities not necessary where substantial evidence demonstrated plaintiff could perform requirements of sedentary work, including testimony that she continued working for a year despite her impairment, that surgery had improved her pain, medications worked "quite well," and objective medical testing was unremarkable); *see generally Tankisi v. Comm'r Soc. Sec.*, 521 Fed. Appx. 29, 34 (2d Cir. 2013) (if the record contains sufficient evidence from which an ALJ can assess the claimant's RFC, remand is not required despite the lack of a medical opinion (citations omitted)). Remand on this ground is therefore not required.

B. Erroneous Severity Determination

Plaintiff next contends that remand is required because the ALJ erred in finding her depression a non-severe impairment and improperly discounted the opinion of the consultative psychologist. (Dkt. No. 9-1 at 14-17)

Social Security regulations provide that an impairment will be found "not severe" if the medical evidence establishes only a slight abnormality or combination of slight abnormalities, which would have no more than a minimal effect on an individual's ability to perform physical or mental basic work-related activities. See 20 C.F.R. § 404.1521(a); Social Security Ruling ("SSR") 85-28, 1985 WL 56856. It is the plaintiff's burden to provide medical evidence demonstrating the severity of her condition. See 20 C.F.R. § 404.1512(a); Bowen v. Yuckert, 482 U.S. 137, 142 n.5 (1987); Miller v. Comm'r of Soc. Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008). An ALJ must consider both severe and non-severe impairments when assessing the claimant's RFC. See 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

Here, the ALJ concluded that plaintiff's depression, while a medically determinable impairment, was not severe at step two of the sequential evaluation process. (Tr. 13-14, 17) He found that plaintiff's depression did not cause more than a minimal limitation in her ability to perform basic work activities, and proceeded to consider the four broad areas of mental functioning.[4] (Tr. 13-14) He found no limitations, other than a mild impairment

---

[4] "In determining whether a mental impairment is severe at step two, the ALJ must follow a 'special technique' whereby the ALJ rates the degree of functional limitation resulting from the impairment in four broad areas (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation." Mayor v. Colvin, 2015 WL 9166119, *15 (S.D.N.Y. 2015) (citing 20 C.F.R. § 404.1520a(a)-(c)).

in concentration. (Tr. 14) The ALJ noted that plaintiff was treated for her depression by her primary care provider and reported improvement on Cymbalta. (Tr. 13)

Later in the ALJ's discussion, he considered the opinion of Janine Ippolito, Psy.D., a consultative psychologist. (Tr. 322-26) In November 2014 plaintiff underwent a evaluation by Dr. Ippolito during which she reported an inability to work due to depression, although she characterized herself as "unemployed." (Tr. 322-23) She stopped working in March of 2014 because her employer had let her go. (Tr. 322) Plaintiff denied any current mental health treatment despite reporting a history of depression dating back 15 years. (Tr. 322-23) Upon examination, she had largely normal findings, including appropriate fund of knowledge, average intellectual functioning, and the ability to complete serial three subtractions and repeat several digits forward and backward. (Tr. 324) She exhibited dysphoric affect and dysthymic mood, with mildly impaired memory due to some distractibility. She had good insight and judgment. (Tr. 323-24) Dr. Ippolito assessed recurring moderate depression and opined that plaintiff had a moderate limitation in dealing with stress and no limitations in other functional areas. (Tr. 325) She concluded that the results of plaintiff's evaluation "appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with claimant's ability to function on a daily basis." (*Id.*)

The ALJ afforded Dr. Ippolito's opinion little weight, finding it inconsistent with the objective medical evidence and that it was contradicted by plaintiff's history of psychiatric treatment only by her primary care provider and her statements that medication improved her depression. (Tr. 17) A review of the record reveals that plaintiff had normal mental status examination findings, including during Dr. Ippolito's exam, and denied anxiety or

difficulty with energy. (Tr. 318, 323, 356, 736, 738, 740, 832, 837, 918, 926) Treatment notes from her primary care provider state that her depression improved with medication, she denied counseling, and had good social support, and her condition was stable. (Tr. 738, 742, 877) Plaintiff testified that she saw a counselor for one visit, but did not feel that "she was the right one for me," and did not pursue another counselor thereafter. (Tr. 42)

Based on this record the Court finds that substantial evidence supports the ALJ's decision that plaintiff's depression was not a severe impairment within the meaning of the regulations. First, the ALJ correctly noted that plaintiff sought treatment only from her primary care provider. See Anderson v. Colvin, No. 14-CV-1038, 2017 WL 2797913, at *2 (W.D.N.Y. June 28, 2017) (finding no indication that plaintiff's depression contributed to work-related limitations, observing that "plaintiff did not seek treatment from a psychiatric source, electing instead to have medication management by her primary care physician.") (citing Patterson v. Colvin, 24 F. Supp. 3d 356, 369 (S.D.N.Y. 2014) (affirming finding that depression was non-severe where the record indicated that plaintiff's "psychological and emotional issues [did] not significantly limit[ ] her ability to work")). Second, plaintiff testified to undergoing treatment for depression for 15 years while continuing to work. See, e.g., Powell v. Berryhill, No. 17CV8922, 2019 WL 1416990, at *4 (S.D.N.Y. Mar. 28, 2019) (ALJ applied correct standard at step two in finding plaintiff's obesity non-severe, where there was no evidence that obesity alone significantly limited his ability to work, and no statement from the plaintiff that he had difficulties working because of his obesity). Finally, the ALJ correctly applied the special technique, see supra at 14, n.4, and his assessment of only mild limitations in one functional area was

supported by the record evidence and by the opinion of the agency review physician, who found the same.[5] (Tr. 63) All of the above constitutes substantial evidence to support the ALJ's severity determination regarding plaintiff's mental impairments. *See Kelsey v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 437, 447 (W.D.N.Y. 2018). The Court therefore finds no error in the ALJ's conclusion that plaintiff did not have a severe mental impairment.

The Court briefly addresses plaintiff's tangential argument that the record contains a non-examining opinion, not cited by the ALJ, which "states that Plaintiff has a severe mental impairment." (Dkt. No 9-1 at 16 n.1) Although the Disability Determination Explanation reads, "Affective Disorders—Secondary—Severe," review psychiatrist G. Kleinerman's conclusions suggest that this notation is a typographical error. After reviewing the evidence, he concluded that plaintiff's "psychiatric impairment [did] not appear severe enough to significantly interfere with [her] ability to function on a daily basis." (Tr. 63) *See generally* 20 C.F.R. §§ 404.1521, 416.921 (2016) (only an impairment that "significantly limit[ed]" a claimant's physical or mental ability to do basic work activities is severe). Dr. Kleinerman found that plaintiff had no restrictions in activities of daily living, maintaining social functioning, and no episodes of decompensation, and only mild difficulty in maintaining concentration, persistence, or pace. (Tr. 62) Such limitations do not demonstrate the existence of a severe mental impairment. *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) (2015) (mild mental limitations demonstrated a non-severe mental impairment); *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) ("[I]f the degree of limitation in each of the first three areas is rated

---

[5] That opinion is discussed in greater detail below.

'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe'"). Thus, contrary to plaintiff's assertion, Dr. Kleinerman's opinion supports the ALJ's conclusion that plaintiff's mental impairment was not severe. The Court reiterates that the ALJ's step two determination need not be disturbed.

For all of the foregoing reasons, the ALJ's decision was supported by substantial evidence and free of legal error.

## CONCLUSION

Accordingly, plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated: August 13, 2019
Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge